NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter*. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| BARRY BERNARD SAPP JR., | |
| Appellant, | Court of Appeals No. A-11755 |
| | Trial Court No. 3AN-13-402 CR |
| v. | |
| | O P I N I O N |
| STATE OF ALASKA, | |
| Appellee. | No. 2516 — September 2, 2016 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael L. Wolverton, Judge.

Appearances: Callie Patton Kim, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Eric A. Ringsmuth, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

One morning in January 2013, Barry Bernard Sapp Jr. dropped his wife off at a downtown Anchorage office of the Alaska Department of Corrections.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

While Sapp was sitting in his car in front of the office, he was approached by a probation officer. This probation officer (who was not supervising Sapp) told him, "Mr. Sapp, I'd like you to come [into] the office for [a] conversation."

Sapp told the probation officer, "Okay", and he began to maneuver his car as if to park it on the street near the office. But then Sapp activated the locks on his car doors. The probation officer tried fruitlessly to pull open the door handle, and then he summoned several other Corrections staff. The Corrections staff stood around Sapp's car and directed him to pull over and park the car.

Instead, Sapp "peel[ed] out" and drove away at high speed — fishtailing, weaving through traffic, and ignoring traffic signals. He collided with another vehicle, and then he drove off without stopping.

For these actions, Sapp was convicted of three crimes: failing to stop at the direction of a peace officer, reckless driving, and leaving the scene of an accident. [1] In this appeal, Sapp challenges only one of these convictions: his conviction for failing to stop at the direction of a peace officer.

Sapp concedes that the probation officer directed him to park his car and come into the Corrections office for a conversation, and that he drove away instead of complying with the probation officer's directive. But the statute Sapp was convicted of violating — AS 28.35.182 — requires proof that a driver "knowingly fail[ed] to stop as soon as [was] practical and ... reasonably safe ... under the circumstances when requested or signaled to do so by a peace officer."

Sapp argues that we should reverse his conviction for failing to stop at the direction of a peace officer because the probation officer who directed him to park his

_____

[1]  AS 28.35.182(a), AS 28.35.400, and AS 28.35.050(b), respectively.

car was not a "peace officer" for purposes of this statute.  As we are about to explain, we agree with Sapp for two reasons.

*The definition of "peace officer" codified in AS 01.10.060(7) governs our interpretation of AS 28.35.182, and probation officers are not "peace officers" under that definition*

AS 01.10.060 contains various definitions that apply throughout all "the laws of [this] state" — in other words, throughout all of the Alaska Statutes — "unless the context otherwise requires".

One of the definitions codified in AS 01.10.060 is the definition of "peace officer".  According to AS 01.10.060(7), "peace officer" means:

> (A) an officer of the state troopers;
> (B) a member of the police force of a municipality;
> (C) a village public safety officer;
> (D) a regional public safety officer;
> (E) a United States marshal or deputy marshal; and
> (F) an officer whose duty it is to enforce and preserve
> the public peace[.]

Probation officers would not be included in this definition unless they were to fall within the category described in subsection (F):  officers "whose duty it is to enforce and preserve the public peace".

But in an informal Attorney General Opinion rendered in 1977 to the executive director of the Police Standards Council (the arm of state government that sets standards for, and certifies, police officers, probation officers, parole officers, and corrections officers),[2] the Alaska Department of Law examined each of the clauses of

---

[2]  *See* AS 18.65.220.

AS 01.10.060(7) — which was numbered AS 01.10.060(6) at the time — and concluded that the definition of "peace officer" codified in this statute "evidences a legislative intent to include only publicly employed law enforcement officers who have full police duties." *See* informal Attorney General Opinion No. 660-77-036 (September 18, 1977), 1977 WL 22059 at *2.

Informal Opinion No. 660-77-036 acknowledged that there was potential ambiguity in the wording of subsection (F), which speaks of all officers "whose duty it is to enforce and preserve the public peace". But relying upon the statutory construction principle of *ejusdem generis* — that is, the principle of interpreting any individual member of a list by reference to the other members of the list, so as to preserve the common unifying principle[3] — the Department of Law concluded that the wording of subsection (F) was limited to "publicly employed law enforcement officers who have full police responsibility and who spend substantially all of their working hours performing these [police] functions." *Ibid.*

In the nearly 40 years since the Department of Law rendered this interpretation of AS 01.10.060(7), the legislature has made slight stylistic changes to the wording of subsection (F), but it has not amended the substance of that clause of the statute. We therefore conclude that the legislature has adopted or acquiesced in the interpretation of AS 01.10.060(7)(F) contained in Informal Opinion 660-77-036. And under that interpretation, probation officers are not "peace officers".

In its brief to this Court, the State suggests that we should not apply the definition of "peace officer" found in AS 01.10.060(7), but rather the definition found in subsection (b)(45) of AS 11.81.900. (AS 11.81.900 is a statute that contains dozens of definitions applicable to Title 11 of the Alaska Statutes.)

---

[3] *See Adamson v. Anchorage*, 333 P.3d 5, 20 (Alaska 2014); *West v. Anchorage*, 174 P.3d 224, 228 (Alaska 2007).

The definition of "peace officer" contained in AS 11.81.900(b)(45) is arguably broader than the definition found in AS 01.10.060(7), because AS 11.81.-900(b)(45) defines "peace officer" as "a public servant vested by law with a duty to maintain public order or to make arrests, whether the duty extends to all offenses or is limited to a specific class of offenses or offenders". The State contends that this broader language includes probation officers, since probation officers are authorized to arrest probationers for violating the conditions of their probation.

We need not decide whether the State is correct in asserting that probation officers fall within the definition of "peace officer" codified in AS 11.81.900(b)(45), because that definition does not apply to the interpretation of "peace officer" in statutes outside Title 11.

AS 11.81.900(b) begins with the words, "In this title [*i.e.*, Title 11], unless otherwise specified or unless the context requires otherwise ... ". Thus, according to the words of the statute, the definitions contained in AS 11.81.900(b) apply only to the provisions of Title 11. Here, the State is asking us to employ one of those definitions when interpreting a crime codified in Title 28.

According to the State, it makes sense to apply the definitions found in AS 11.81.900(b) to *all* of Alaska's criminal statutes, regardless of whether those criminal statutes are contained in Title 11 or Title 28 or some other title of the statutes.

If Alaska law contained no other definition of "peace officer", the State's argument might have more force. But our legislature has codified a separate definition of "peace officer" in Title 1, and the legislature has expressly declared that this definition applies throughout the Alaska Statutes "unless the context otherwise requires".

Because "peace officer" is defined in AS 01.10.060, and because the legislature has declared that the definitions contained in AS 01.10.060 apply to every Alaska statute unless there is an affirmative reason to conclude otherwise, we reject the

State's suggestion that we should use Title 11's differing definition when we interpret a statute found in Title 28. The definition found in AS 01.10.060 governs our inquiry.

And as we have already explained, we conclude that the legislature has adopted or acquiesced in the definition of "peace officer" set forth in informal Attorney General Opinion No. 660-77-036 — a definition that does not include probation officers.

Accordingly, Sapp did not violate AS 28.35.182 when he refused to pull his car over at the direction of a probation officer.

*The question of whether AS 28.35.182 requires the State to prove that when a peace officer directs a motorist to pull over, the peace officer must have a constitutionally adequate justification for doing so*

This case raises one other significant legal issue.

According to the evidence presented at Sapp's trial, the probation officer who directed Sapp to pull over and park his car had no reason for doing so, apart from his desire "to talk" or "to speak" to Sapp about some unspecified topic. Thus, even if we had concluded that probation officers were "peace officers" for purposes of AS 28.35.-182, the facts of Sapp's case would raise a significant constitutional question.

As we explained earlier, Sapp was convicted of violating AS 28.35.182 for knowingly failing to stop his vehicle "when requested or signaled to do so by a peace officer". At Sapp's trial, no evidence was presented regarding the probation officer's justification for asking Sapp to stop, other than the probation officer's desire to talk to him. The charge against Sapp was apparently premised on the idea that AS 28.35.182 makes it a crime for a motorist to fail to honor a peace officer's request to stop even if the officer lacks any constitutionally valid justification for directing the motorist to stop.

If AS 28.35.182 were construed in this fashion, it would raise serious questions under the Fourth Amendment to the federal constitution and under Article I, Section 14 of the Alaska constitution.

We note that, until 1998, AS 28.35.182 declared that motorists were obliged to stop "if requested or signaled to do so *for a lawful purpose* by a peace officer". *See* former AS 28.35.182(a) (pre-1998 version). The former version of the statute defined "lawful purpose" as "making an arrest or issuing a citation, preventing personal injury or property damage in an emergency, and investigating a situation when the peace officer has a reasonable suspicion that imminent public danger exists or that serious harm has recently occurred". *See* former AS 28.35.182(d)(1) (pre-1998 version).

This requirement of "lawful purpose" was apparently intended as a safeguard against the possibility that the statute would infringe constitutional protections — *i.e.*, to make sure that the statute did not authorize the State to prosecute motorists for failing to consent to an unconstitutional seizure.

When the legislature amended AS 28.35.182 in 1998 (*see* SLA 1998, ch. 136, § 1), the requirement of a "lawful purpose" was removed from the statute, but we could find nothing in the related committee minutes to explain why the legislature took this action.

Because we are reversing Sapp's conviction on other grounds, we need not consider this matter further.

*The error in Sapp's sentence for leaving the scene of an accident*

Although Sapp's other convictions are unaffected by our reversal of his conviction for failing to stop at the direction of a peace officer, we note that there is an

obvious error in Sapp's sentence for leaving the scene of a non-injury accident, AS 28.35.050(b).

When the superior court sentenced Sapp for this offense, the court imposed a consecutive term of 1 year to serve. But the maximum sentence for violating AS 28.35.050(b) is 90 days' imprisonment. *See* AS 28.90.010(b). *See also Walsh v. State*, 134 P.3d 366, 371 (Alaska App. 2006) (where we discussed this point). In other words, Sapp received an illegally severe sentence for this offense.

We accordingly direct the superior court to re-sentence Sapp to a lawful term of imprisonment.

*Conclusion*

Sapp's conviction for failing to stop at the direction of a peace officer is REVERSED. Additionally, we direct the superior court to re-sentence Sapp for the offense of leaving the scene of a non-injury accident.

We have not addressed Sapp's claim that his conviction for failing to stop at the direction of a peace officer should merge with his conviction for reckless driving, because our reversal of Sapp's failure to stop conviction moots this claim.

Because we are remanding Sapp's case to the superior court for re-sentencing on Sapp's conviction for leaving the scene of a non-injury accident, we decline to reach Sapp's argument that the superior court erred in finding him a "worst offender" for purposes of his reckless driving and leaving the scene convictions. Sapp can ask the superior court to reconsider this matter during the re-sentencing proceedings.