NOTICE

*The text of this opinion can be corrected before the opinion is published in the* Pacific Reporter. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

NICHOLAS FORSYTHE,

                Appellant,

    v.

STATE OF ALASKA,

                Appellee.

Court of Appeals No. A-11871
Trial Court No. 4FA-12-3374 CR

O P I N I O N

No. 2535 — January 27, 2017

Appeal from the District Court, Fourth Judicial District, Fairbanks, Patrick S. Hammers, Judge.

Appearances: David D. Reineke, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. David Buettner, Assistant District Attorney, Fairbanks, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

---

[*]   Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

On November 5, 2012, Alaska Railroad Special Agent Kathy Kraft received a report that a car was "spinning brodies" in a parking lot owned by the railroad. [1] When Kraft drove her patrol car to the property, she found a dark-colored jeep parked in a corner of the lot.

Kraft tried to make contact with the driver (who turned out to be Nicholas Forsythe), but he began to drive away. Kraft then activated the overhead lights of her patrol car (as a signal for Forsythe to stop), but Forsythe continued driving away. Thinking that Forsythe might not have observed her flashing lights, Kraft activated her siren — but Forsythe still failed to stop. Kraft then pulled alongside Forsythe and, using her hands, directed him to pull over. Forsythe responded by shaking his head "no", and he continued to drive.

Kraft decided to radio the Alaska State Troopers for assistance. Even after a trooper patrol car arrived on the scene and signaled Forsythe to stop, Forsythe continued driving for approximately another mile before he finally pulled over.

Based on these events, Forsythe was charged with failing to stop at the direction of a peace officer, AS 28.35.182(b), for failing to pull over when he was directed to do so by Special Agent Kraft.

At Forsythe's trial, after the State presented its evidence, Forsythe's attorney sought a judgement of acquittal, arguing that Kraft was not a "peace officer" for purposes of AS 28.35.182. The district court denied the defense attorney's motion, and Forsythe was convicted. Now, on appeal, Forsythe renews his claim that the State's evidence was legally insufficient because Kraft was not a peace officer.

---

[1]   As explained in Wikipedia, the term "spinning brodies" refers to a maneuver where a driver rotates either the rear or front set of wheels around the other set of wheels in a continuous motion, creating a circular skid-mark pattern of rubber on the roadway. See https://en.wikipedia.org/wiki/Doughnut_(driving)

This Court recently issued an opinion — *Sapp v. State*, 379 P.3d 1000 (Alaska App. 2016) — in which we addressed the question of what types of officials qualify as "peace officers" for purposes of AS 28.35.182.

In *Sapp*, we held that this question is controlled by the definition of "peace officer" codified in AS 01.10.060(7). [2] This statute contains six subsections — (A) through (F) — each of which specify a different type of official who qualifies as a peace officer.

The subsection of the statute that applies to Forsythe's case is subsection (F), which declares that the term "peace officer" includes "[any] officer whose duty it is to enforce and preserve the public peace". In *Sapp*, we interpreted subsection (F) as encompassing only "publicly employed law enforcement officers who have full police responsibility and who spend substantially all of their working hours performing these police functions." [3]

The question in Forsythe's case, then, is whether the evidence presented at Forsythe's trial was sufficient to establish that Kraft was a publicly employed law enforcement officer who had full police responsibility and who spent substantially all of her working hours performing police functions.

At Forsythe's trial, Kraft gave a detailed explanation of her job and her duties. She testified that, as a special agent for the Alaska Railroad, her primary duty was law enforcement. She holds a police commission through the Department of Public Safety, and her job for the Alaska Railroad was "the same as being a police officer for the City of Fairbanks", except that her physical jurisdiction is railroad property.

---

[2]   *Sapp*, 379 P.3d at 1001-02.

[3]   *Id*. at 1002.

Kraft testified that, as an Alaska Railroad special agent, she was responsible for policing all sorts of offenses — including traffic violations, driving under the influence, domestic violence, assaults, and thefts. She was authorized to arrest people, and she was allowed to engage in active pursuit of law-breakers beyond the boundaries of railroad property. When she was on duty, she wore a uniform and she carried a sidearm, pepper spray, a taser, and handcuffs. She drove a patrol car that was marked "police" and "special agent"; this patrol car was equipped with red and blue lights, a siren, and gun racks.

Forsythe nevertheless argues that Kraft did not perform the functions of a public officer, but rather the functions of a private security guard employed by the Alaska Railroad Corporation to police the corporation's property. Forsythe contends that, because the physical jurisdiction of Alaska Railroad special agents is limited to railroad property, Alaska Railroad special agents fail to meet the test codified in AS 01.10.060(7)(F) — *i.e.*, they have no duty to "enforce and preserve the *public* peace".

Although the Alaska Railroad is designated as a "corporation" by the Alaska Statutes, it is not a normal business corporation. Rather, AS 42.40.010 declares that the Alaska Railroad Corporation is "an instrumentality of the state within the Department of Commerce, Community, and Economic Development." This same statute further declares that the operation of the Alaska Railroad by the corporation "is considered an essential government function of the state."

Similarly, even though AS 42.40.250(20) speaks of the Alaska Railroad's power to maintain a "security force", the statute clearly envisions that this security force will operate as a police force. AS 42.40.250(20) declares that the duty of the Alaska Railroad's security force is not simply to enforce the corporation's rules and protect its interests, but also "to enforce municipal ordinances [and] state laws ... with respect to

violations that occur on or to property owned, managed, or transported by the corporation[.]"

Thus, the provisions of AS 42.40.250(20) corroborate Kraft's testimony that her law enforcement duties as an Alaska Railroad special agent were the same as the law enforcement duties of a police officer employed by a political subdivision of the state — except that her physical jurisdiction was the property owned or managed by the railroad, rather than the political boundaries of a city, municipality, or borough.

We hold that the special agents of the Alaska Railroad's security force are "peace officers" within the meaning of AS 01.10.060(7)(F) as interpreted in *Sapp v. State*. Forsythe therefore violated AS 28.35.182(b) when he knowingly failed to stop at the direction of Special Agent Kraft (who was in active pursuit of Forsythe for a violation that had just occurred on Alaska Railroad property).

The district court correctly denied Forsythe's motion for a judgement of acquittal. Accordingly, the judgement of the district court is AFFIRMED.