NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| SHANNON M. SILOOK,<br><br>Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>Appellee. | Court of Appeals No. A-11608<br>Trial Court No. 3PA-10-1577 CR<br><br><br>O P I N I O N<br><br><br>No. 2552 — May 12, 2017 |

Appeal from the Superior Court, Third Judicial District, Palmer, Vanessa H. White, Judge.

Appearances: Callie Patton Kim, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Nancy R. Simel, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

Shannon M. Silook's three-year-old daughter suffered severe head injuries when she was left in the care of Silook's live-in boyfriend, Michael Ponte. When Silook

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

was interviewed by the police about what had happened, Silook told the police that *she*, not Ponte, had been caring for the child. Silook also told the police that her daughter had suffered the injuries earlier, either by hitting her head on some rocks or by falling during a sledding accident.

For telling these lies to the police, Silook was convicted of first-degree hindering prosecution, AS 11.56.770. Silook now appeals her conviction. She does not dispute that she lied to the police, but she argues that her actions did not constitute the crime of hindering prosecution as defined in the statute.

For the reasons explained in this opinion, we conclude that the prosecution against Silook was based on a misinterpretation of the hindering prosecution statute, and that her conviction must therefore be reversed.

*Underlying facts*

After Michael Ponte and Shannon Silook had dated for a time, Silook became pregnant with the couple's child. During Silook's pregnancy, starting in the summer of 2009, Ponte lived in Wasilla with Silook and her two other children — five-year-old I.S., and three-year-old K.S.

In July 2009, Silook took I.S. with her to visit family in Savoonga. Silook left K.S. in the care of her parents (Silook's father and stepmother), who also lived in Wasilla.

In the middle of Silook's trip, Silook's parents returned K.S. to Ponte's care. Within hours after K.S. was returned to Ponte's care, Ponte called Silook to tell her that K.S. was "all bruised up". Silook assumed that K.S. had been injured while her parents were caring for her, so she telephoned her parents and confronted them. Silook's parents denied that K.S. had been injured while in their care.

In early August, about a month after Silook returned from Savoonga, K.S. became sick, and Silook sought medical care for her. On August 3, 2009, K.S. was admitted to the Alaska Native Medical Center in Anchorage for transient estropia (crossed eyes). A medical examination revealed that K.S. was suffering from a swelling of the optical disk in both of her eyes, and an MRI scan revealed that K.S. was bleeding subdurally in the left rear portion of her brain.

By mid-September, K.S.'s optical disk swelling had resolved, and she had a normal eye exam.

In early November, Gordon Shepard (a friend of Ponte's) noticed that K.S. appeared to be suffering from a broken collar bone. (One of K.S.'s shoulders was sagging, and K.S. cried and said that her shoulder hurt when Shepard picked her up.) Shepard mentioned these observations to Silook.

A few days later, on November 12, 2009, Silook drove to Anchorage to run some errands and to visit her newborn daughter, who was in intensive care because of medical problems associated with her birth. Silook left I.S. and K.S. in Ponte's care while she was in Anchorage.

Silook returned to Wasilla around 9:00 p.m. that evening. The two children were already in bed, and Ponte was playing video games with his friend, Shepard. Ponte told Silook that he had given both children a bath before putting them to bed.

Silook herself went to bed a couple hours after she came home, but she was awakened by the sound of K.S. crying and saying "Momma" repeatedly. Silook and Ponte went to K.S.'s bedroom and saw that she was "jerking". Ponte drove Silook and K.S. to the Mat-Su Regional Hospital's emergency room in the middle of the night.

Silook later testified that Ponte told her to say that *she* (and not Ponte) had given the children a bath that evening, and that K.S. had been injured earlier in a sledding accident.

By the time K.S. arrived at Mat-Su Regional, she was not responding normally to her family or to other people. Silook told the doctor that K.S. had complained of a headache the evening before, and that K.S. had been smacking her lips that evening. Silook also told the doctor about the cerebral contusion that had been diagnosed in early August. But neither Silook nor Ponte told medical personnel that K.S. had suffered any recent trauma.

Medical testing showed that there was blood in K.S.'s spinal fluid; this prompted the doctor to order a CT scan of K.S.'s brain. This scan revealed bleeding in the left front portion of K.S.'s brain. An X-ray of K.S.'s chest showed that she had pneumonia in both lungs, as well as a collar bone fracture that was about two weeks old — possibly a re-break.

Because of K.S.'s neurological impairment, K.S. was transferred to the Alaska Native Hospital in Anchorage. By the time K.S. arrived there, she was non-responsive. She had hemorrhaging in both of her retinas, and she appeared to be blind. The doctors at the Native Hospital concluded that K.S. had probably suffered a head trauma.

K.S. was discharged from the Native Hospital in early December 2009. At that time, she was still unable to see, but she had become responsive, and she was eating on her own. K.S. was transferred to a facility in Seattle to undergo neurological rehabilitation — relearning to speak, and trying to recover her normal ability to walk.

In August of the following year (2010), after K.S. had regained her sight and had completed her rehabilitative treatment, she was interviewed by a police investigator. K.S. told the investigator that Ponte had choked her and had held her head underwater while he was giving her a bath. K.S. later told her grandfather that Ponte had choked her, and that he had spun her around.

*The conduct for which Silook was convicted*

Silook spoke twice to Sgt. Joel Smith of the Wasilla Police Department about what had happened to her daughter. The first interview took place on the day that K.S. was hospitalized in Anchorage. Silook told Smith that she did not know how her daughter came to be injured. Silook falsely told Smith that *she*, not Ponte, had put K.S. to bed that night — and that, other than complaining of a headache, K.S. had been fine when Silook put her to bed.

Silook's second interview with Sgt. Smith took place by telephone three days later. During this second interview, Silook told Smith that her children had been playing outside on the day that K.S. was injured. She suggested that K.S. might have hit her head on some rocks, or that K.S. might have fallen when she was sledding earlier in the day. But Silook again declared K.S. had seemed fine when she put her to bed around 9:00 p.m.

Later, when Silook testified in front of the grand jury, she admitted that she had not been home when K.S. was put to bed that night — and that she had not even looked in on K.S. before she went to bed herself. Silook testified that Ponte told her to say that K.S. had been injured in a sledding accident, and that K.S. had complained of a headache at bedtime.

Silook told the grand jurors that she went along with these lies because Ponte was "very controlling".

The grand jury indicted Silook for two felonies: first-degree hindering prosecution (for lying to Sgt. Smith), and second-degree assault (for failing to take action to protect her daughter from serious physical injury at the hands of Ponte). Following a jury trial, Silook was acquitted of assault, but she was convicted of hindering prosecution.

*Did Silook's conduct violate Alaska's hindering prosecution statute?*

The question we must decide is whether Silook's lies to Sgt. Smith constituted the *actus reus* of hindering prosecution — in other words, whether the hindering prosecution statute covers this kind of conduct.

Under AS 11.56.770, a person commits first-degree hindering prosecution if they "render assistance" to another person who has committed a felony. The phrase "renders assistance" is defined in subsection (b) of the statute. In its prosecution of Silook, the State relied on the third and fourth clauses of this definition. These clauses of the statute declare that a person "renders assistance" if the person:

> (3) provides ... the other person with money, transportation, a dangerous instrument, a disguise, or other means of avoiding discovery or apprehension; [or]

> (4) prevents or obstructs, by means of ... deception, anyone from performing an act which might aid in the discovery or apprehension of the other person[.]

With regard to subsection (b)(3), the State's theory was that, by lying to Sgt. Smith, Silook provided her boyfriend Ponte with a "means of avoiding discovery or apprehension". And with regard to subsection (b)(4), the State's theory was that Silook's lies to Sgt. Smith constituted "deception" that "prevented or obstructed" the police from "performing an act which might aid in the discovery or apprehension" of Ponte.

As we are about to explain, both of the State's theories of prosecution are based on misinterpretations of the statute. We therefore reverse Silook's conviction for hindering prosecution.

*The origins of, and the policy behind, Alaska's definition of "rendering assistance"*

As explained in the Commentary to the draft of Alaska's current criminal code, the definition of "rendering assistance" found in AS 11.56.770(b) is based on Hawai'i Statute § 710-1028. [1] Both the wording of and the commentary to this Hawai'i statute suggest that it was drawn in part from an early version of Model Penal Code § 242.3 ("hindering apprehension or prosecution"). [2]

---

[1] Alaska Criminal Code Revision, Tentative Draft, Part 4 (1977), p. 126. The corresponding Hawai'i statute, § 710-1028, reads:

For the purposes of [hindering prosecution in the first and second degrees], a person renders assistance to another if he:

(1) Harbors or conceals such person;

(2) Warns such person of impending discovery, apprehension, prosecution, or conviction, except this does not apply to a warning given in connection with an effort to bring another into compliance with the law;

(3) Provides such person with money, transportation, weapon, disguise, or other means of avoiding discovery, apprehension, prosecution, or conviction;

(4) Prevents or obstructs, by means of force, deception, or intimidation, anyone from performing an act that might aid in the discovery, apprehension, prosecution, or conviction of such person; or

(5) Suppresses by an act of concealment, alteration, or destruction any physical evidence that might aid in the discovery, apprehension, prosecution, or conviction of such person.

[2] *See* the Hawai'i "Commentary on §§ 710-1028 to 1030", which can be found on Westlaw, appended to the text of Hawai'i Stat. § 710-1030.

More specifically, the Hawai'i commentary refers to Model Penal Code Tentative § 208.32, "Aiding Another to Avoid Prosecution or to Consummate [a] Crime". This tentative provision and its accompanying commentary are found in Model Penal Code Tentative Draft No. 9 (1959), pp. 194-202. This same early provision of the Model Penal Code is cited by the Alaska Legislature in its commentary to our hindering prosecution statute. *See* 1978 Senate Journal, Supp. No. 47 (June 12), pp. 87.

Loosely speaking, Alaska's hindering prosecution statute was intended to address the same types of societal harm that used to be covered by the common-law crime of being an "accessory after the fact". This common-law crime covered any person who, knowing that someone else had committed a felony, "received", "relieved", "comforted", or "assisted" the felon in order to hinder the felon's "apprehension, trial, or punishment." [3]

Although Alaska's hindering prosecution statutes (AS 11.56.770 - 780) were intended to further the same general societal interests as the common-law crime of "accessory after the fact", the drafters of our criminal code did not intend Alaska's hindering prosecution statutes to cover the entire range of conduct that would have made a person liable as an accessory after the fact at common law.

This point is expressly stated in the Legislature's commentary to AS 11.56.770: "the six methods [of hindering prosecution] described [in the statute] present a narrower concept of aid than in common law." [4] And this point is discussed more fully in the Commentary to the Alaska Criminal Code Revision, Tentative Draft, Part 4 (1977), pp. 78-80.

---

[3]    Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* (3rd edition 1982), p. 749.

[4]    1978 Senate Journal, Supp. No. 47 (June 12), pp. 87.

As that Commentary explains, Alaska's hindering prosecution statutes depart from the common law of "accessory after the fact" in a significant way: Rather than encompassing any and all acts that assist or give comfort to a lawbreaker, the six clauses of AS 11.56.770(b) were drafted to establish "the precise acts needed to commit [the crime of] hindering prosecution". *Id.*, p. 79.

The drafters wrote our statute this way because they wished to endorse the approach of the Model Penal Code:

> The issue of policy is whether to forbid specific kinds of aid or aid of any character whatsoever. [The] need to limit the kinds of aid which will be made criminal [is apparent] when we consider the possible application of [this] Section to a person who merely refuses to answer police questions about the fugitive, or gives misleading answers, or advises the fugitive to flee, or counsels him as to likely refuges or the law of extradition, or supplies bail. Although assistance of this character would appear to fall within the ordinary meaning of the term "aid", ... the courts have shown a reluctance to extend the law so far. ... [Because] the community does not desire prosecution in these situations, it would seem preferable not to use the comprehensive term "aid", but to specify the prohibited forms of aid, as [Alaska's draft statute] does.

Alaska Criminal Code Revision, Tentative Draft, Part 4 (1977), p. 80, quoting Model Penal Code, Tentative Draft No. 9 (1959), § 208.32, Commentary at pp. 199-200.

(An even more comprehensive discussion of this point — the policy of limiting the types of acts that will make a person liable for hindering prosecution — is found in the Commentary to the Official Draft of the Model Penal Code: *Model Penal Code and Commentaries* (1980), Part II, §§ 240.0 to 251.4, pp. 230-36.)

In sum, our definition of "renders assistance" was intended to codify the Model Penal Code's approach of narrowing the scope of prosecution from what it had been at common law. Rather than reaching all acts that comfort or assist a lawbreaker, our hindering prosecution statute requires proof of the specific types of acts listed in AS 11.56.770(b).

*The definition of "render assistance" in subsection (b)(3) of the statute refers only to tangible forms of assistance — i.e., physical or material assistance*

As we explained earlier, one of the State's theories of prosecution in this case was that, when Silook lied to Sgt. Smith about when and how her daughter came to be injured, Silook "rendered assistance" to her boyfriend Ponte under subsection (b)(3) of the statute — the provision that encompasses providing a person with "money, transportation, a dangerous instrument, a disguise, *or other means of avoiding discovery or apprehension*". (Emphasis added.)

The State's prosecution of Silook under subsection (b)(3) rested on a mistaken interpretation of this provision. Subsection (b)(3) is limited to *tangible assistance* to a lawbreaker — *i.e.*, physical or material assistance — and not assistance by deceptive words.

Subsection (b)(3) of our statute is a slight variation from Hawai'i Statute § 710-1028(3), which in turn was a slight variation from Model Penal Code § 242.3(2). The Model Penal Code provision covers situations where a defendant "provides [a criminal] with a weapon, transportation, disguise or other means of avoiding apprehension or effecting escape".

The Commentary accompanying this provision of the Model Penal Code clarifies that this language was not intended to cover a person who lies to the police.

Rather, this language was intended to cover only "tangible forms of assistance". *Model Penal Code and Commentaries* (1980), Part II, §§ 240.0 to 251.4, p. 234.

Although the wording of AS 11.56.770(b)(3) differs somewhat from the wording of Model Penal Code § 242.3(2), there is nothing in the text or history of the Alaska provision to suggest that the drafters of our statute intended to depart from the Model Penal Code's decision to limit the scope of this provision to the rendering of *tangible* aid.

Subsection (3) of our statute declares that a defendant "renders assistance" to a person who has committed a crime if the defendant "provides ... the other person with money, transportation, a dangerous instrument, a disguise, or other means of avoiding discovery or apprehension". The components of this list — "money", "transportation", "dangerous instrument", or "disguise" — are all consistent with the Model Penal Code's aim of punishing people who provide physical or material assistance to a criminal.

And because the list in subsection (3) of our statute refers to different types of physical or material aid, the principle of *ejusdem generis* counsels us to interpret the concluding phrase — "other means of avoiding discovery or apprehension" — as likewise referring to physical or material aid, and not the act of lying to the authorities. [5]

This interpretation of subsection (3) is bolstered by the fact that this subsection, by its very terms, applies only to people who "provide" a felon with the listed forms of aid. The use of the verb "provide" likewise suggests that subsection (3) is aimed at people who give physical or material aid to the criminal — not people who tell lies to the authorities.

---

[5] *See Sapp v. State*, 379 P.3d 1000, 1002 (Alaska App. 2016).

We thus conclude, both from the legislative history of AS 11.56.770(b)(3) and from the wording of the statute itself, that the State's interpretation of the statute is wrong. This subsection of the statute is limited to the furnishing of tangible aid. Because Silook did not render tangible aid to Ponte, she could not lawfully be found guilty of "rendering aid" under subsection (b)(3).

At Silook's trial, the jury was told that they could find Silook guilty under *either* subsection (b)(3) *or* subsection (b)(4) of the statute. And the jury was not asked to indicate which subsection their verdict was based on. Thus, even if the State's misinterpretation of subsection (b)(3) were the only flaw in the State's prosecution of Silook, we would have to reverse Silook's conviction and declare that Silook was entitled to a new trial.

But there is a separate flaw in the State's theory of prosecution under subsection (b)(4) of the statute.

*(b) The definition of "renders assistance" in subsection (b)(4) does not cover the lies that Silook told to the police in this case*

Subsection (b)(4) of the statute declares that the phrase "renders assistance" means "prevents or obstructs, by means of ... deception, anyone from performing an act which might aid in the discovery or apprehension of the other person".

The Model Penal Code does not contain a provision like our subsection (b)(4). Instead, the Model Penal Code contains a provision that seemingly applies much more directly to Silook's conduct. Model Penal Code § 242.3(5) declares that a person commits the crime of "hindering apprehension or prosecution" if the person "volunteers false information to a law enforcement officer." But the Model Penal Code Commentary to subsection (5) expressly declares that this provision is strictly limited to

"volunteering" false information to the authorities — *i.e.*, providing the false information *unsolicited*:

> Mere failure to report a crime is not proscribed by this section. Neither is giving misleading or even false answers to inquiries initiated by the police. ... Paragraph (5) of this [section] proscribes only ... volunteered misinformation to the police[.]

*Model Penal Code and Commentaries* (1980), Part II, §§ 240.0 to 251.4, p. 235.

In other words, the drafters of the Model Penal Code expressly decided not to criminalize the kind of conduct that Silook engaged in: giving false or misleading answers during a police-initiated interview.

Because Alaska's subsection (4) is worded so differently from the Model Penal Code provision, it is arguable that the drafters of our criminal code wanted to enact a broader provision that would also cover lies told during a police-initiated interview. But we have found nothing in the legislative history of our statute, or in the legislative history of Hawai'i Stat. § 710-1028 (the immediate precursor of our statute), to convincingly demonstrate that the drafters of our statute intended to depart from the Model Penal Code's approach to this issue.

We have, however, found a number of cases from other states in which the courts interpreted statutory language almost identical to our subsection (b)(4) — and these cases generally limit the scope of this statutory language so that it does *not* apply to the facts of Silook's case. These states reach this result in two different ways.

The first group of courts emphasizes that the language of subsection (b)(4) requires the government to prove that the defendant's conduct "prevented" or "obstructed" the police from "performing an act" that might aid in the discovery or apprehension of the person who committed the crime. These courts hold that even when

the government proves that a defendant lied to the police, the government must additionally prove that the defendant's lies actually altered the course of the investigation — by preventing or obstructing the police from performing an investigative act that they otherwise would have performed.

For instance, Washington Statute § 9A.76.050(4) declares that a person "renders criminal assistance" if the person "prevents or obstructs, by use of force, deception, or threat, anyone from performing an act that might aid in the discovery or apprehension of [a person who is being sought for a crime]". In *State v. Budik*, 272 P.3d 816 (Wash. 2012), the defendant was a shooting victim who was convicted of hindering prosecution under this clause of the statute because he repeatedly lied to the investigating officers by telling them that he did not know the identity of the people who shot him. [6]

The Washington Supreme Court overturned the defendant's conviction, in part because the government failed to show that Budik's lies prevented or obstructed the police from performing some act that would have aided their discovery or apprehension of the shooters:

> [T]here is no evidence in the record that Budik's false statements ... prevented or obstructed any act. [Subsection (4) of our statute covers] "deception" that "[p]revents or obstructs" certain acts ... . The relevant question therefore becomes whether some act would have been performed *but for* the [defendant's] false statement. If not, it cannot be said that the [defendant's] *deception* prevented or obstructed an act that might aid in the discovery or apprehension of another person.
>
> . . .
>
> There is simply no evidence in the record that[,] but for Budik's false disavowal of knowledge of the identity of the

---

[6]    *Id*. at 818-820.

shooters[,] anyone would have "perform[ed] an [additional] act that might aid in the discovery or apprehension" of one of the shooters. ... [Thus], there is no evidence that Budik's deception ... caused the prevention or obstruction of any act.

*Budik*, 272 P.3d at 822 (emphasis in the original).

The Missouri Court of Appeals reached the same result in *State v. McMasters*, 815 S.W.2d 116, 118 (Mo. App. 1991):

> There is no question that defendant lied to the police concerning the location of [the suspect,] Cowart. But the statute does not make lying alone a crime. The deception must prevent or obstruct the police from performing an act aiding in the discovery or apprehension of Cowart. There is no evidence in the record that defendant's statement had any effect at all on the police conduct. They did not divert their surveillance or attempt to locate Cowart at a different location. There is no testimony that[,] had defendant told them of Cowart's location[,] they would have conducted themselves any differently than they did. ... The officers testified they placed no reliance on defendant's statement, they did nothing different, and they were not obstructed or prevented from doing anything by the statement. In short, there was no evidence that the police were prevented or obstructed from doing anything by defendant's lie.

For another decision adopting this construction of the statutory language, see *Ex parte Burton*, 783 So.2d 887, 891-93 (Ala. 2000).

In Silook's case, the State presented no evidence that Silook's lies to Sgt. Smith actually altered the course of the police investigation into the assault on K.S., by preventing or obstructing the authorities from performing an investigative act that they otherwise would have performed.

The second group of courts limits the scope of the language found in subsection (b)(4) by emphasizing the concluding part of the clause: "prevents or obstructs ... anyone from performing an act which might aid *in the discovery or apprehension of the other person*". These courts interpret the statutory phrase "discovery ... of the other person" as referring only to the person's whereabouts (*i.e.*, their physical location) — and *not* to proof of the person's connection to, or involvement in, the crime being investigated.

For example, Oregon has a hindering prosecution statute that contains language virtually identical to our subsection (b)(4).[7] In *State v. Werdell*, 136 P.3d 17 (Or. 2006), the Oregon Supreme Court concluded that the statutory phrase "discovery or apprehension of such person" refers solely to the discovery of the whereabouts of the person who has committed the crime — and that this language does not cover instances where "[a] defendant suppressed evidence that might have aided in the discovery *of the fact that such a person had committed a crime*." *Id*. at 20-21 (emphasis in the original).

> The "discovery" with which [our statute] is concerned is the discovery of a particular "person who has committed a crime punishable as [a] felony." Those words will not stretch to cover the "discovery ... that a known person has committed a crime punishable as a felony."

*Werdell*, 136 P.3d at 20.

And more recently, the Alabama Court of Criminal Appeals likewise held that the statutory phrase "discovery ... of the other person" refers solely to the discovery of a person's *physical location* — "finding or locating [the] person" — and that this statutory language "does not include identifying such person as being involved with or

---

[7] Oregon Stat. § 162.325(1)(e).

connected to the committing of a crime". *Collier v. State*, __ So.3d __ (Ala. Crim. App., October 2, 2015), 2015 WL 5773852 at *12.

To sum up this discussion: Our hindering prosecution statute appears to be drawn from the Model Penal Code (by way of the Hawai'i statutes). The Model Penal Code version of this offense was expressly drafted to ensure that the act of lying to the police during a police-initiated interview would *not* constitute the offense of hindering prosecution. Even though subsection (b)(4) of our statute contains different language from the corresponding Model Penal Code provision, there is nothing in the legislative history of our statute to demonstrate that our drafters intended to repudiate the Model Penal Code approach to this particular issue.

Moreover, among the states having statutory language that mirrors the language of AS 11.56.770(b)(4), several of those courts have interpreted their statutes in ways that would not allow Silook to be convicted for lying to the police in the present case — either because the State did not show that Silook's lies prevented or obstructed the police from performing investigative acts that they otherwise would have performed, or because Silook's lies did not impede the authorities' ability to ascertain Ponte's physical whereabouts (as opposed to Ponte's connection to, or involvement in, the underlying assault on K.S.).

We need not decide which of these interpretations of subsection (b)(4) should be adopted in Alaska — because, under any of them, the State's prosecution of Silook was flawed.

*Conclusion*

The State's prosecution of Silook was based on misinterpretations of both subsection (b)(3) and subsection (b)(4) of the first-degree hindering prosecution statute, AS 11.56.770.  We therefore REVERSE the judgement of the superior court.